Eric **GONZALEZ**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 71A03–0811–CR–539.

Court of Appeals of Indiana.

June 25, 2009.

Thomas P. Keller, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arthur Thaddeus Perry, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Eric Gonzalez appeals his conviction for Auto Theft,[1] a class D felony, arguing that the evidence is insufficient to support the conviction. Finding no error, we affirm.

### FACTS

Sometime in early April 2007, Valentina Gutierrez had returned to her South Bend residence and mistakenly left her keys in the car or in her front door when she entered her house. About ninety minutes later, she realized that she had left her keys outside, but when she went to retrieve them, they were gone.

On April 24, 2007, Valentina drove her grandchildren to daycare, returned home, and parked her husband's red Chevrolet Malibu in the driveway. She went inside and stayed inside for the rest of the day. Her husband came home around 3:30 p.m. and noticed that the Chevrolet was not in the driveway. After Valentina told him that she did not know where the vehicle was, they telephoned the police, who came out to their residence and completed a report.

At approximately 8:00 a.m. on May 22, 2007, Richard Whetstone was in his South Bend residence when he noticed a blue pickup truck drive through an alley and stop next to a garage attached to a house that was two houses away from Whetstone's. Whetstone had believed that house to be vacant. One of the people in the truck opened the garage door. A white vehicle pulled out of the garage into the alley, and the blue pickup truck then backed into the garage. Whetstone then heard a noise that sounded like a recipro-

1. Ind.Code § 35–43–4–2.5(b).

cating saw cutting metal. Worrying that the people in the garage might be cutting metal out of the heating ducts and selling it for scrap, Whetstone called the police to report suspicious activity.

The police arrived and, after talking with Whetstone, proceeded to the garage. The white vehicle was still parked outside the garage in the alley with a male sitting inside and the blue pickup truck was still backed into the garage. A police officer walked into the garage and saw two males standing next to a red Chevrolet Malibu, one of whom was Gonzalez. The officer asked the two men if that was their Chevrolet; they looked at each other and did not respond. Gonzalez displayed a very nervous demeanor, and the officer began to suspect that the men were engaging in illegal activity. The officer called for backup and placed the men in handcuffs for officer safety.

The Chevrolet's license plate was lying on the ground, and after the police ran a check on it, they learned that it was Hugo's vehicle that had been reported stolen nearly a month before. The hood, the doors, the deck lid, and the top of the vehicle had been cut off, and several of those pieces were in the back of the blue pickup truck. Additionally, the federal identification stickers had been peeled off of the Chevrolet's door, which was in the back of the pickup truck and bore the marks where the stickers had been before their removal. The police also recovered Valentina and Hugo's house key from the scene. At one point Gonzalez said, "Hey, they just called me because I have a truck." Tr. p. 188–89.

Gonzalez testified that the blue pickup truck belonged to his stepmother and that he had been driving it on the day in question. He testified that a friend had asked him to come to the house where the red Chevrolet was located, and that he had picked up another friend and then drove to the house. Gonzalez further testified that the other two people worked on the Chevrolet while he was there and that they cut off parts of the vehicle.

On May 24, 2007, the State charged Gonzalez with class D auto theft. Following a July 15–16, 2008, jury trial, the jury found Gonzalez guilty as charged. On October 15, 2008, the trial court sentenced Gonzalez to eighteen months imprisonment, all suspended to probation. Gonzalez now appeals.

## DISCUSSION AND DECISION

■ Gonzalez's sole argument on appeal is that the evidence is insufficient to support his conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility, considering instead only the evidence supporting the conviction and any reasonable inferences that the factfinder may have drawn from that evidence. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind.Ct.App.2008). We will affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Pelley v. State*, 901 N.E.2d 494, 500 (Ind.2009). Circumstantial evidence alone may support a conviction if inferences may reasonably be drawn that allowed the factfinder to find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Gonzalez of class D felony auto theft, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally exerted unauthorized control over Hugo's vehicle, with the intent to deprive Hugo of the vehicle's value or use or of a component part of the vehicle. I.C. § 35–43–4–2.5(b).

■ Gonzalez directs our attention to well-established authority holding that,

"for purposes of supporting a theft conviction in cases of considerable lapses of time, [the State must prove] that the defendant had exclusive possession of the stolen property during the period of time since the theft occurred." *Shelby v. State*, 875 N.E.2d 381, 384 (Ind.Ct.App.2007), *trans. denied* (citing *Muse v. State*, 419 N.E.2d 1302, 1304 (Ind.1981)). More specifically,

> [t]he mere unexplained exclusive possession of recently stolen property will sustain a conviction of theft and burglary. However, where any considerable length of time has elapsed from the time of the theft to the time of the arrest there must be some showing that the defendant has had the exclusive possession of the property during that period of time. In cases where the defendant is found to be in possession of property which has not been recently stolen, and there has been no showing of exclusive possession of the property during the relevant time frame, this court may also consider additional evidence tending to support the defendant's conviction. Both exclusive possession of stolen goods and knowledge that they were stolen may be proven by circumstantial evidence. To determine whether property was recently stolen, we must examine the length of time between the theft and possession as well as circumstances such as the defendant's familiarity or proximity to the property at the time of the theft and the character of the goods.

*Shelby*, 875 N.E.2d at 385 (reversing auto theft conviction because defendant's mere control over the car fifteen days after it was stolen was insufficient to support the conviction) (internal citations omitted). This court has found that a five-day delay between the date a vehicle was reported stolen and the date on which the defendant was found exercising control over the vehicle were sufficiently lengthy to trigger the requirements articulated above. *Buntin v.*

*State*, 838 N.E.2d 1187, 1191 (Ind.Ct.App. 2005) (reversing auto theft conviction because defendant's mere control over the vehicle five days after it was stolen was insufficient to support the conviction); *Trotter v. State*, 838 N.E.2d 553, 557–58 (Ind.Ct.App.2005) (same).

We find these cases to be distinguishable from the circumstances herein. In *Shelby, Buntin*, and *Trotter*, the defendant was charged with the initial theft of the entire vehicle. Under those facts, it makes complete sense to require the State to establish a nexus—either in time or possession—between the defendant and the initial theft.

■ Here, in contrast, Gonzalez was charged based on the portion of the statute making it a crime to knowingly or intentionally exert unauthorized control over a vehicle with the intent to deprive the owner of a *component part* of the vehicle. I.C. § 35–43–4–2.5(b). When a defendant is charged under this part of the statute, the State must establish a nexus in time or possession between the defendant and the theft of the vehicle's component parts.

The record here establishes that, although there was a month-long delay between the initial theft of the Chevrolet and the date on which Gonzalez was arrested, on the day of his arrest, he drove the pickup truck to the site in question. A neighbor heard the sound of a saw cutting metal coming from what he believed to be an abandoned garage and called the police. There were several pieces of the vehicle—including the door, from which the vehicle identification stickers had been removed—sitting in the truck when the police arrived. An officer asked Gonzalez, who displayed a very nervous demeanor, and another man if that was their Chevrolet; they looked at each other and did not respond. Thus, there is every indication

that Gonzalez must have known that the vehicle had been stolen and was being taken apart so that the parts could be sold. We find this evidence sufficient to establish that Gonzalez knowingly or intentionally exerted unauthorized control over the Chevrolet with the intent to deprive the owner of component parts of the vehicle.

The judgment of the trial court is affirmed.

BARNES, J., concurs.

MAY, J., concurs with opinion.

MAY, Judge, concurring with separate opinion.

The thrust of Gonzalez' argument is that the evidence is insufficient because the State had no evidence linking him to the car during the twenty-eight days it was missing. I agree with the majority that Gonzalez' case is distinguishable from *Shelby v. State,* 875 N.E.2d 381 (Ind.Ct. App.2007), *trans. denied; Buntin v. State,* 838 N.E.2d 1187 (Ind.Ct.App.2005); and *Trotter v. State,* 838 N.E.2d 553 (Ind.Ct. App.2005), because Gonzalez was charged with theft of the parts rather than the initial theft of the car. Therefore, contrary to Gonzalez' argument, the State did not have to prove he was in possession of the car from the date it was stolen.

I write separately to clarify that, although the theft of the parts may be considered recent, Gonzalez's possession of the parts does not appear to be unexplained and exclusive. *See Shelby,* 875 N.E.2d at 385 ("The mere unexplained exclusive possession of recently stolen property will sustain a conviction of theft and burglary."). However, I agree that there is sufficient circumstantial evidence Gonzalez knew the car was stolen and intended to deprive the rightful owner of its value or use. *See* op. at 341–42. Therefore, I concur.