Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHRISTINA D. PACE**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| MATTHEW D. TRIBBLE, | ) | |
| Appellant-Defendant, | ) | |
| vs. | ) | No. 79A02-1404-CR-290 |
| STATE OF INDIANA, | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Les A. Meade, Judge
Cause Nos. 79D05-1306-FD-285, 79D05-1307-FD-307

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Matthew Tribble ("Tribble") appeals his convictions for Auto Theft, a Class D felony,[1] and Battery by Bodily Waste, as a Class D felony.[2] He alleges that insufficient evidence supports each of those convictions.[3] We affirm.

**Facts and Procedural History**

On May 13, 2013, Lafayette Police Officers Ryan Carlisle, Blake Switzer, and Ian O'Shields were speaking with several individuals in the course of an investigation. When Tribble was advised that he was being arrested on a battery charge, he "took off running." (Tr. at 80.) Although he initially ignored commands to stop, Tribble was apprehended and escorted toward a police vehicle. Through an open window, Tribble attempted to spit on Officer Andrew McCormick ("Officer McCormick") while the officer was seated in his patrol car.

A group of individuals approached the officers and Tribble. At least one of them incited Tribble "don't let them take you," to which Tribble responded by spitting toward

---

[1] Ind. Code § 35-43-4-2.5. The offense is now a Level 6 felony. We refer to the version of the statute in effect at the time of Tribble's offense.

Tribble suggests that he may have been convicted of Receiving Stolen Property. However, at the conclusion of the bench trial, the trial court judge stated that he was "not even going to bother to find [Tribble] guilty of count 2 [receiving stolen property]" because of double jeopardy concerns. (Tr. at 217.)

[2] I.C. § 35-42-2-6. This statute is now repealed and Indiana Code Section 35-42-2-1(b)(2) describes battery by means of placing any bodily fluid or waste on another person. The offense is now a Level 6 felony if committed against a public safety official while the official is engaged in the official's official duty. We refer to the statute in effect at the time of Tribble's offense.

[3] He does not appeal his conviction for Resisting Law Enforcement, as a Class A misdemeanor, I.C. § 35-44.1-3-1.

2

Officer McCormick. (Tr. at 104.) Tribble became more agitated and tried to pull away from officers. As Tribble was brought to the ground, he was spitting blood. Officer McCormick knelt down and put his hand on the side of Tribble's face to control the spitting. Eventually, the officers were able to place Tribble in the police vehicle, where he continued to spit blood on the interior. Officer McCormick transported Tribble to a hospital. At the hospital, he noticed that he had blood on his uniform pants.

On June 21, 2013, Alise Karis ("Karis") reported the theft of her nearly-new moped, which had a distinctive pink muffler. At approximately 1:15 a.m. on June 23, 2013, Officer Kurt Sinks observed Tribble and a companion pushing a moped with a pink muffler. Officer Sinks illuminated the moped, whereupon both men dropped it and began to walk away. Officer Sinks ordered them to stop. Tribble approached the officer saying, "I didn't know that moped was stolen, some guys asked me to fix it." (Tr. at 187.) The moped, then in a badly damaged condition, was identified as Karis's property.

On March 13, 2014, Tribble was tried before a jury on charges of Resisting Law Enforcement and Battery by Bodily Waste. He was convicted as charged. On March 27, 2014, Tribble was tried in a bench trial on charges of Auto Theft and Receiving Stolen Property. He was convicted of Auto Theft. At a consolidated sentencing hearing, the trial court imposed upon Tribble an aggregate sentence of four years imprisonment, with two years suspended to probation. He now challenges his convictions for Auto Theft and Battery.

## Discussion and Decision

### Standard of Review

The standard by which we review alleged insufficiency of the evidence to support a criminal conviction is well-settled:

> When reviewing the sufficiency of the evidence to support a conviction, "appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (emphasis added). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Wright v. State, 828 N.E.2d 904 (Ind. 2005). To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it "most favorably to the trial court's ruling." Id. Appellate courts affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000) (emphasis added). It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." Moore v. State, 652 N.E.2d 53, 55 (Ind. 1995). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001).

Drane v. State, 867 N.E.2d 144, 146-47 (Ind. 2007).

### Auto Theft Conviction

To convict Tribble of auto theft, the State was required to prove that Tribble "knowingly and intentionally exert[ed] unauthorized control over the motor vehicle of another person, with intent to deprive the owner … of the vehicle's value or use." I.C. § 35-43-4-2.5(b). Pursuant to Indiana Code Section 9-13-2-105(a), a "motor vehicle" means a vehicle that is self-propelled. A motor scooter is a motor vehicle for purposes of the auto theft statute. See J.B. v. State, 748 N.E.2d 914, 916 (Ind. Ct. App. 2001).

4

According to Tribble, enough time elapsed that it is "possible" that someone else stole the moped and disposed of it before he had it. Appellant's Brief at 12. He directs our attention to a rule enunciated in Muse v. State, 419 N.E.2d 1302, 1304 (Ind. 1981), that is, "where any considerable length of time has elapsed from the time of the theft to the time of the arrest there must be some showing that defendant has had the exclusive possession of the property during that period of time."

In Muse, the defendant had been discovered driving a vehicle reported stolen three months earlier. See id. at 1303. In the glove box were receipts that indicated he had been using the vehicle for a period of time. Id. On appeal of his theft conviction, Muse claimed that the evidence was insufficient because it was wholly circumstantial and showed only that he possessed the vehicle. More specifically, he argued that "the presence of the registration and old license plate in the van and his open admission of the presence of the van at his home show that he was unaware of the van's stolen status since he didn't try to 'hide' anything." Id. at 1304. The Court acknowledged the rule regarding exclusive possession, but found sufficient evidence of probative value to support the jury's verdict:

> It is well settled that unexplained possession of stolen property shortly after the time of the theft is a circumstance from which a jury is entitled to draw an inference of guilt. . . . It is not contested in this case that the van found in defendant's exclusive possession was a stolen vehicle. The circumstances pointed to defendant's possession of the van within three weeks of the theft and his continued use thereafter. Defendant did not testify and presented no evidence which would explain his possession of the stolen property. He did not have a proper registration for the vehicle. What inferences were to be drawn from these circumstances were matters for the jury and not this Court.

Id. (citations omitted.)

5

Almost three decades later, our Indiana Supreme Court handed down Fortson v. State, 919 N.E.2d 1136, 1143 (Ind. 2010), specifically rejecting the "so-called mere possession rule." It is now clear that the mere unexplained possession of recently stolen property, standing alone, will not automatically support a theft conviction. Id. Rather, "the fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational [fact-finder] could find the defendant guilty beyond a reasonable doubt." Id.

In Girdler v. State, 932 N.E.2d 769, 772 (Ind. Ct. App. 2010), a panel of this Court concluded that, in addition to application only where a considerable length of time has elapsed, "the Muse rule regarding exclusive possession of stolen property since the time of the original theft only applies where direct evidence of a defendant's knowledge of the property's stolen character is lacking and such knowledge must be proven circumstantially." In that case, there was direct evidence of the defendant's knowledge because Girdler had told police he knew the van was stolen upon observation of its broken windows. Id. at 770.

In Gibson v. State, 533 N.E.2d 187 (Ind. Ct. App. 1989), a panel of this Court determined that the defendant's unexplained possession of a car only two days after it was stolen was insufficient, standing alone, to sustain a conviction of auto theft. However, Gibson's conviction was affirmed in light of the corroborating evidence. Id. at 189. The steering column had been damaged to permit use of a sharp instrument instead of a key,

6

and Gibson had advised officers that "some guy" had offered to pay him for parking the car. Id. at 188. Gibson had no key but did possess a screwdriver.

On the other hand, this Court has found that, where a reported theft is not "recent" and the State fails to present evidence of exclusive possession or corroborating evidence, an auto theft conviction is not sustainable. Trotter v. State, 838 N.E.2d 553, 558 (Ind. Ct. App. 2005). See also Kidd v. State, 530 N.E.2d 287 (Ind. 1988) (finding insufficient evidence to sustain a burglary conviction where the sole evidence was that a defendant possessed items taken in a burglary two to four days earlier) and Buntin v. State, 838 N.E.2d 1187 (Ind. Ct. App. 2005) (possession of a vehicle stolen five days earlier and turning around upon spotting a police officer did not support an auto theft conviction).

Here, the circumstances of Tribble's possession are substantially similar to those of Gibson. Tribble and his companion were seen pushing Karis's stolen moped in the street around 1:00 a.m., less than two full days after it had been reported missing. When Officer Sinks illuminated the moped with his spotlight, the pair immediately dropped the moped into the street and started to walk away. After Officer Sinks ordered the men to stop, Tribble walked toward Officer Sinks and volunteered that "he didn't know it was stolen" and "some guys had asked him to fix it." (Tr. 187.) The ignition had been ripped out; an empty hole remained. A back compartment "was ripped off." (Tr. 170.) Also, the seat had been broken and the headlight was damaged. Wires were hanging down in the front. Given Tribble's possession, unsolicited statement, and the obvious destruction of the vehicle, there is sufficient evidence from which the trial court as fact-finder reasonably

7

could have concluded that Tribble exerted control over the moped with intent to deprive Karis of its value or use.

<u>Battery by Bodily Waste Conviction</u>

To convict Tribble of Battery by Bodily Waste, as a Class D felony, as charged, the State was required to establish, beyond a reasonable doubt, that Tribble "knowingly or intentionally in a rude, insolent or angry manner place[d] blood or another body fluid or waste on a law enforcement officer … identified as such and while engaged in the performance of official duties." I.C. § 35-42-2-6.

Officer McCormick testified that Tribble spit toward him and he jumped back to avoid being hit in the face with the spittle. Tribble continued to struggle and spit. Officer McCormick then held Tribble's face in an attempt to control the discharge direction because Tribble was "actively spitting." (Tr. at 129.) At the hospital, Officer McCormick discovered a round spot of blood on his uniform pants leg. He opined that it was not caused by his own hand-to-pants contact because it "would have been a smeared pattern" in that case. (Tr. at 131.) Tribble's argument that an abrasion on Tribble's face may have bled onto Officer McCormick's hand and been transferred invites us to reweigh the evidence, which we will not do. <u>Drane</u>, 867 N.E.2d at 146.

**Conclusion**

The evidence is sufficient to permit the trial court as fact-finder to conclude beyond a reasonable doubt that Tribble committed Auto Theft. The evidence is sufficient to support the jury's verdict that Tribble committed Battery by Bodily Waste.

8

Affirmed.

ROBB, J., and BROWN, J., concur.